The Malpractice Act occurred on January 27, 2004. Braten filed his malpractice claim on May 7, 2007. To be timely filed, tolling of the statute of limitations had to have continued at least until May 5, 2004. For tolling to have continued at least until May 5, 2004, Braten had to have had trust in Kaplan at least until that date. And as much as May 5, 2007 fell on a Saturday, Braten had to file the malpractice claim May 7, 2007. What a fact. Unless based on a plaintiff's complaint and the attached documents, he can prove no set of facts to support tolling. On May 10, 2004, Braten filed his May 10 letter motion asking the divorce court to remove Kaplan as his attorney. The letter motion was dated May 2, 2004. As stated therein, Braten began preparing it on May 2, 2004 and completed it on May 6, 2004. After further consideration and deliberation, Braten decided to file it on May 10, 2004. Thus, Braten claimed tolling ended at the latest May 10, 2004 when he filed the letter motion or at the earliest on May 6, 2004 when he completed it, making the May 7, 2007 filing of the malpractice claim timely. Kaplan, however, based on his manufactured fact that Braten had a 5-1-2014 deposition, admitted he had lost trust in Kaplan by May 2, 2004 when he began writing the letter motion. Based thereon, Kaplan claimed tolling ended May 2, 2004, making the malpractice claim time-barred. The fact is that Braten never admitted nor stated at the deposition that he had lost trust in Kaplan by May 2, 2004. Because Judge Ellis accepted Kaplan's manufactured claim, he erroneously found that tolling ended May 2, 2004, making the malpractice claim time-barred. Thus, the determination must fit, leaving the question when tolling ended May 2, May 6, or May 10, 2004 an issue of fact for trial. Braten submits at this time the court need only assess whether tolling ended May 10, May 6, or May 2, 2004 is an unresolved issue of fact, which will then permit the malpractice claim to go to trial. Judge Batts erroneously found that in objecting to Magistrate Ellis's recommendation, Braten simply recycles the same arguments he set forth opposing Kaplan's motion for summary judgment. Consequently, she reviewed the dismissal recommendation for clear error. Just one second, I can't turn the page. Braten submits that while the objections may be verbose and unusual in format, they sufficiently cite the record and provide sufficient basis to require de novo review for the dismissal recommendation. Because Braten is pro se, the court should afford him leniency when reviewing the objections and construe them to raise the strongest arguments suggested therein. Braten submits that a de novo review will for the reasons set forth in the objections and the appeal briefs produce a different result by determining that Judge Ellis made erroneous factual findings and inappropriate reliance on case law, with the result that there is an outstanding issue of fact as to when the malpractice statute of limitation expired, which will then permit the malpractice claim to go to trial. Thank you, your honors. Thank you. We'll hear the other side. Good morning, your honors, and may it please the Court. I'm Andrew Adler for Defendant Elliot Kaplan. And the first point raised by Mr. Braten was that loss of trust for purposes of the continuous representation doctrine is normally a question of fact. However, it isn't always a question of fact. And we bring to the Court's notice on this point Aaron, DiCarlo, and Hoffenberg by Judge Preska, summary judgment cases where the evidence was overwhelming in favor of the attorney who was accused of malpractice. And we rely on those cases. The May 2, 2004, letter, at least it was dated that day. Is it dated or drafted that day? He began drafting it that day, and it's dated that day. We don't contest that Mr. Braten worked over and revised that manuscript until May 6. Nothing happened to cause him to lose more confidence between May 2 and May 10. In other words, it was the same information in his head all the way through. That's correct, your honor. As far as I know, he does say in his letter that he was reading the court, the matrimonial court, April 24, 2004, order, and having read it, quote, I knew I had to file this letter motion. The order makes clear that Mr. Kaplan lied to me in the court and defrauded me in the court on a number of occasions. So that kind of shows the timeline of Mr. Braten's thinking, but we don't have to define what it means. Wasn't there pretty strong, very strong statements about in the letter as to prior activities that would cause a reasonable person to lose confidence prior to May 2? Yes, your honor. I believe that from the first sentence onward and unwavering throughout, he says that my client before that April conference had bungled discovery issues, and after that April 2004 conference, however, it seems that Mr. Braten became really vehement in his dislike of my client and expressed it unequivocally. So the letter, going back to when the letter was drafted, so we've got the three dates, May 2nd, 4th, and 10th, right? Where the 2nd and 4th for the drafting and the 10th for the mailing. Am I right about the dates? It was May 2nd, began drafting, completed on May 6th. May 6th. So 2nd, 6th, and 10th. And anything after the 2nd is going to be untimely. That's our argument, your honor. So the summary judgment standard, and that's what we're applying here, requires that all inferences be drawn in favor of the non-movement. And isn't it as equally likely that the letter could have been drafted in principal part on the 6th as on the 2nd? So doesn't your argument rely upon an assumption here that the thinking had evolved as of May 2nd? No, Judge Farris. We're arguing that in all of the relevant considerations were already in Mr. Bratton's mind the moment he put pen to paper. And you can see that from the first sentence through 50 plus other paragraphs. None of them show any hesitation to say my client is out. He's already thrown down the gauntlet. So I do understand, yes, he might have written only a few lines or a few sentences in the intervening days. But it wouldn't matter because all we have to show is that he lost trust and confidence at the time he started writing it. Essentially, your argument is that the entirety of the letter demonstrates a loss of trust and confidence, even if those words aren't used. And therefore, it doesn't really matter which paragraph started when, it's all of a piece. Right, I'm invoking common sense and logic when you look at the entirety of the letter, there's nothing in there. Furthermore, even if Mr. Bratton was contemplating various lines of argument or abuse, that wouldn't matter, the specifics don't matter, all we need is a general conclusion of Mr. Bratton that my client was unfit to continue service. Thank you. Thank you very much. Mr. Bratton, you've reserved a minute's rebuttal. We'll be happy to hear you now. Okay, your honors. First, my adversary talks about the sequencing in the letter. This letter was a product of a number of days and the result of much cut and pasting till I got to the point where I was satisfied with the letter by May the 6th. However, I still wasn't sure what to do, whether I wanted Kaplan replaced or not. I assumed that he was a competent lawyer. I may not have been happy with his representation, but I had not come to the conclusion that I had lost confidence in him. Moreover, they use quotes from a deposition to prove that I had lost confidence when I started writing the letter. A clear reading of the deposition shows that's not the case. Had they wanted that question answered in that way, they could have asked the questions, when I lost confidence, did I lose confidence by May 2nd? And I just suggest that the court read the full transcript of the deposition and the various spins they took on their quote to see what I mean. And I think that's clearly spelled out in my reply brief. Thank you. Thank